IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHRISTOPHER M. PAYNE,<br><br>Plaintiff,<br><br>vs.<br><br>KEAGAN GEER, in his individual capacity; and DEMETRIA HERMAN, in her individual capacity;<br><br>Defendants. | **8:23CV427**<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Christopher M. Payne ("Plaintiff"), an inmate in custody at Tecumseh State Correctional Institution ("TSCI"), filed a complaint suing Defendant Demetria Herman ("Herman"), in her individual capacity under 42 U.S.C. § 1983 (the "Complaint").[1] Filing No. 1. Upon initial review, Plaintiff's malicious prosecution claim against Herman was allowed to proceed to service of process. Filing No. 10.

Now pending before the Court is Defendant Herman's Motion for Summary Judgment (the "MSJ"), seeking dismissal of Herman from this action. Filing No. 63. Herman contends that all of Plaintiff's allegations against her in the Complaint took place when she was acting as a Deputy County Attorney with the Douglas County Attorney's Office (the "DCAO"), rendering her absolutely immune from suit. Filing No. 64 at 1. Alternatively, Herman contends that even if she is not entitled to absolute immunity she is entitled to qualified immunity due to the absence of evidence supporting

[1] Plaintiff also names Keagan Geer ("Geer"), an investigator with the Nebraska State Patrol ("NSP") as a defendant. *See* Filing No. 1.

Plaintiff's claims, and, for that same reason, she is entitled to judgment as a matter of law. Filing No. 64 at 5-8.

For the reasons discussed below, the Motion shall be granted, and Defendant Herman shall be dismissed from this action with prejudice.

## I. PROCEDURAL HISTORY

On September 29, 2023, Plaintiff filed his Complaint against Herman and Keagan Geer ("Geer"), an officer with the Nebraska State Patrol (the "NSP"), alleging claims of malicious prosecution, Fourth Amendment search and seizure violations, and Eighth Amendment deliberate indifference to medical needs against both defendants in their individual capacities. Filing No. 1. Upon initial review of the Complaint only the malicious prosecution claim was allowed to proceed against both Herman and Geer, but all other claims were dismissed. Filing No. 10.

Herman and Geer answered the Complaint, *see* Filing Nos. 12 & 27, after which defendant Herman filed the MSJ currently before this Court, Filing No. 63, as well as a brief and affidavit in support, a statement of undisputed facts, and an index. *See* Filing Nos. 64, 65, 66, & 67. Plaintiff filed his response in opposition, a statement of undisputed facts, responses to Herman's statement of undisputed facts, and an index of evidence including his own affidavit. Filing Nos. 77, 78, 79, & 80. Herman then filed a reply. Filing No. 81. Geer was not required to participate in or otherwise respond to the MSJ and did not. As such, following the filing of Herman's reply, the MSJ was ripe for review.

## II. FACTUAL BACKGROUND[2]

The basis for Plaintiff's claims stem from events occurring on or about March 30, 2022, when Plaintiff was transferred from TSCI to Omaha

[2] This factual background contains both contested and uncontested facts to provide context to the issues raised in the MSJ.

Correctional Center ("OCC"). Filing No. 1 at 1; Filing No. 65 at 2; Filing No. 77 at 1. Upon arrival at OCC, Plaintiff's belongings were searched by OCC staff who discovered several photographic prints depicting seminude and nude subjects which OCC staff believed were minor children (the "Images"). The NSP was contacted, and Geer was assigned to investigate the Images. Filing No. 1 at 2.

Plaintiff alleges Geer contacted Herman about Plaintiff and the Images and, as a result, Herman instructed and assisted Geer with drafting an affidavit of probable cause for Plaintiff's arrest (the "Affidavit") pursuant to Nebraska Revised Statute Section 28-813.01(1), governing "Sexually explicit conduct; visual depiction; unlawful; penalty; affirmative defense; forfeiture of property." *Id.* at 3. Plaintiff further alleges that Herman submitted the Affidavit to a judge which ultimately resulted in Plaintiff's arrest on September 7, 2022. *Id.* at 4.

A hearing was held on October 17, 2022, which Geer attended and presented testimony, but Herman did not. *Id.* at 7. As a result of the Hearing, the charges against Plaintiff were dismissed as the State "failed to produce sufficient evidence that a crime had been committed and that there was no probable cause for [Plaintiff's] arrest, continued detention, or prosecution." *Id.* Plaintiff alleges that following the hearing "Herman was witnessed in the hallway outside of the courtroom by attorneys with the Douglas County Public Defender's Office conspiring with Geer . . . . discussing ways to 'get [Plaintiff]' and charge [him] with some other crime." *Id.*

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the

initial responsibility of informing the Court of the basis for the motion and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id*.

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id*. "The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791–92 (8th Cir. 2011) (cleaned up). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## IV. DISCUSSION

Herman argues that she must be dismissed from this suit as she is absolutely immune, or alternatively that she is entitled to qualified immunity from suit as a prosecutor and is entitled to judgment as a matter of law for lack of evidence. Filing No. 64.

Absolute immunity shields prosecutors from § 1983 claims as it encourages officials to perform prosecutorial responsibilities without fear of personal liability. *Imbler v. Patchman*, 424 U.S. 409, 424-27 (1976); *see also Williams v. Hartje*, 827 F.2d 1203, 1208 (8th Cir. 1987). "[P]rosecutors enjoy absolute immunity in initiating a prosecution and in presenting the state's case, insofar as that conduct is intimately associated with the judicial phase of

the criminal process." *Kohl v. Casson*, 5 F.3d 1141, 1145 (8th Cir. 1993) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citing *Imbler*, 424 U.S. at 430–31)).

"'The decisions relating to the initiation and dismissal of cases are at the very heart of a prosecutor's function as an advocate for the state, and absolute immunity thus attaches to those decisions,'" as are the decisions to drop charges and initiate investigations. *Anderson v. Larson*, 327 F.3d 762, 769 (8th Cir. 2003) (quoting *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1268 (8th Cir. 1996)). For example, prosecutors are absolutely immune from suit when reviewing and deciding to charge a violation of the law where their conduct is preparing and filing charging documents, moving a court for arrest warrants, and reviewing evidence to determine if they believe probable cause exists to file charges, *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997). However, "[t]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 327 F.3d 762 (8th Cir. 2003). And, "the official seeking the protection of absolute immunity bears the burden of establishing it for the function in question." *Id.* (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).

"Qualified immunity shields government officials from suit unless the plaintiff shows (1) 'a violation of a constitutional right' and (2) the officials' conduct violated a clearly established right." *Carnes v. Blehm*, 180 F.4th 1159, 1166 (8th Cir. 2026) (quoting *Estate of Nash v. Folsom*, 92 F.4th 746, 753-54 (8th Cir. 2024) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009))).

Plaintiff does not dispute that Herman was a Deputy County Attorney with the DCAO who prosecuted crimes involving child victims and crimes of sexual violence, including cases involving child sexual abuse material. Filing No. 78 at 1. Instead, he contends that Herman stepped outside her prosecutorial role by assisting police officer and co-defendant Geer in drafting

the Affidavit resulting in his arrest, by advising Geer during his investigation on whether there was probable cause to arrest Plaintiff, and investigating Plaintiff herself, all of which are "administrative function[s]" not entitled to immunity. Filing No. 79 at 2-8. Plaintiff is incorrect.

**A. Drafting the affidavit**

Plaintiff contends that Herman assisted Geer in drafting the Affidavit supporting the issuance of a warrant for his arrest, taking her actions outside the scope of absolute and qualified immunity from suit as a prosecutor. Filing No. 79 at 2-3. In support, Plaintiff points to Geer's answer to the complaint where Geer responded that he "was involved in the drafting of an affidavit used in [Plaintiff's] prosecution" in response to Plaintiff's allegation that "Herman advised Geer as to what contents to include in the Affidavit and assisted Geer in drafting the affidavit." *Id.* He contends Geer's statement is an admission that Herman was involved or at least a failure to deny she was involved in drafting the Affidavit. *Id.* at 3 (arguing that Geer's response did not constitute a denial of his claim because the failure to deny an allegation where a responsive pleading is required (other than one relating to the amount of damages) is an admission pursuant to Fed. R. Civ. P. 8(b)(6)).

As an initial matter, had Herman assisted Geer in drafting the Affidavit, to the extent she was essentially "vouching for the truth" of the information contained within it, prosecutorial absolute immunity would not attach. *See Kohl*, 5 F.3d at1146–47. However, upon review by this Court, the issue of whether Herman did or did not participate in drafting the Affidavit need not be addressed as Herman's actions in this instance are protected under the doctrine of qualified immunity even if she had.

As stated by Judge Richard G. Kopf of this District:

> Resolution of the qualified immunity defense in the summary judgment context requires a step-by-step analysis. *Cross v. City of*

> *Des Moines*, 965 F.2d 629, 631–33 (8th Cir.1992) (reversing decision denying motion for summary judgment on qualified immunity grounds where police officers entered a woman's apartment in an attempt to find her husband who was the subject of an arrest warrant). First, the court must determine whether the plaintiff has alleged the violation of a constitutional right. *Id.* Second, the court must determine whether the right was "clearly established" at the time of the alleged violation. *Id.* Third, if the constitutional right was clearly established, the court must determine whether there are material facts in dispute regarding the objective reasonableness of the defendant's conduct in light of the law and the facts known to the defendant at the time. *Id.* Lastly, if the facts are undisputed, and the defendant could be found to have acted reasonably if the conduct is viewed objectively, then summary judgment must be granted for the defendant. *Id.*

*Doran By & Through Doran v. Condon*, 5 F. Supp. 2d 1067, 1072 (D. Neb. 1998), *aff'd sub nom. Doran v. Condon*, 187 F.3d 641 (8th Cir. 1999).

The crux of the constitutional harm Plaintiff appears to allege is that his arrest was made pursuant to a warrant that was not supported by probable cause.[3] Filing No. 1. In such instances, "police officers seeking arrest warrants are entitled to qualified immunity for their actions unless the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Kohl*, 5 F.3d at 1146–47 (cleaned up). As in *Kohl*, "[b]ecause [Plaintiff] alleges that [Herman] was performing, in essence, the function of seeking an arrest warrant, the test of qualified immunity is the same" for Herman as it would be for an officer. *Id.* at 1147. Therefore, the relevant issue here is whether Herman "'had an objectively reasonable belief that [the Affidavit] established probable cause,'" not whether it actually did. *Id.* (quoting *Thompson v. Reuting*, 968 F.2d 756, 760 (8th Cir. 1992)).

[3] Plaintiff misunderstands what rights are at issue in a qualified immunity claim, citing to the right to be free from malicious prosecution. *See* Filing No. 79 at 8. However, as Plaintiff discusses probable cause in relation to this portion of his argument, the Court construes his claim as arguing the requirement that an arrest warrant be supported by probable cause as the right at issue here.

Upon review, this Court concludes that the Affidavit presented sufficient facts supporting a reasonable belief that probable cause to issue the arrest warrant existed. One of the images which Herman reviewed supporting the charge against Plaintiff was described by Herman as follows:[4]

> [The Image] was in color on a full sheet of paper and consisted of a nude young boy, approximately seven to ten years old, shown from mid-chest to mid-thigh with his penis fully visible, and a thick substance dripping down his body and off of his exposed genitals. The focus of the image was on the child's penis[.]

Filing No. 66 at 3.

The Affidavit contained the following:

- A description of the same image as provided by Herman as described previously, as well as the description of several other images of nude pre-pubescent boys and girls and a multitude of images of clothed boys between the ages of six and twelve that were found in Plaintiff's possession.
- A handwritten quote (by an unknown author) found on an envelope where some of the images were located which stated in relevant part: "I like the little boys who can still get arouse by dirty pictures. I like to watch the naughtiness awaken."
- A description of Geer's questioning of Plaintiff, who told Geer some of the images were from a book titled "Radiant Identities."
- A description of Geer's investigation of the book Radiant Identities and its author followed by Geer's opinion that the images found in

[4] Plaintiff contests Herman's description of this image to the extent he alleges the focus of the image is on the popsicle drips on the boy's stomach and thighs, and that the the "thick substance" Herman described are the drippings from the popsicle, which Plaintiff contends was not on the boy's penis. Filing No. 78 at 2.

Plaintiff's possession were "portrayed in a manner consistent with" images taken by the author of Radiant Identities.

- A description of Geer's other investigatory activities including confirming that Plaintiff was previously convicted twice for sexual assault of a child, one of whom was a six-year-old boy.
- A statement that Geer believed probable cause to believe Plaintiff possessed visual depictions of sexually explicit conduct which would depict children as one of its participants or portray observers in violation of Nebraska law.

Filing No. 80 at 7-9.

Assuming, without finding, that Herman participated in drafting or otherwise assisting with the preparation of the Affidavit, she is entitled to qualified immunity. While the definition of "sexually explicit" is a subjective term and is therefore debatable, the description of the images as meeting the statutory definition, along with the other information contained in the Affidavit is not so lacking in indicia of probable cause as to render official belief in its existence unreasonable. Indeed, other courts faced with determining whether it was reasonable for a police officer to find images from Radiant Identities sexually suggestive have found it to be a reasonable belief. *United States v. Cannon*, No. 10-50108-001, 2011 WL 2600682, at *17 (W.D. Ark. May 19, 2011), *report and recommendation adopted*, No. 10-50108, 2011 WL 2600660 (W.D. Ark. June 30, 2011).

For these reasons this Court finds that Herman is immune from suit under the qualified immunity doctrine.

**B. Advising Geer regarding probable cause**

Plaintiff contends that Herman "determined the existence of probable cause" and informed Geer that she would bring charges based on some of the

evidence Geer obtained. Filing No. 79 at 10. He argues Herman's determination of probable cause is an administrative function well outside the scope of prosecutorial immunity, citing to *Burns v. Reed*, *supra*, in support. Filing No. 79 at 10. In support of his claim, he cites to the following paragraph from Herman's affidavit:

> I believed that image of the nude boy met the statutory definition of a Visual Depiction of Sexually Explicit Conduct, and that Payne's motivation was for sexual gratification based on his conviction for sexually abusing a boy of that approximate age, his letters requesting additional images, one per page showing "all parts." Additionally, Payne had attempted to hide these images from detection by jail staff by placing the documents on the cardboard underside of a legal pad, securing a sheet of paper to keep the documents attached to the notebook backing and unable to fall out if the notebook was held up and shaken. I was aware that no correctional facility would allow any material containing that image in its library.

Filing No. 79 at 7 (citing Filing No. 65 at ¶ 7d [3]).

As an initial matter, a party opposing a summary judgment motion "may not rely on mere allegations and suppositions . . . but must come forward with evidence creating a genuine issue of material fact." *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). And, a properly supported motion for summary judgment is not defeated by a self-serving affidavit or other unsubstantiated allegations. *See Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir.2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor"). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff attaches no evidence that Herman ever advised Geer about what needed to be contained in the Affidavit to support a probable cause finding in his own affidavit or in any of his pleadings. Instead, he simply concludes Herman advised Geer without any evidence to support his claim and misconstrues Herman's statements in her own pleadings and her affidavit in an attempt to defeat prosecutorial immunity. He has failed.

Herman's informing Geer that she intended to charge Plaintiff after reviewing the evidence presented is not legal advice. Moreover, the Court in *Burns* found that providing legal advice to the police, as opposed to reviewing evidence to determine if the evidence supports criminal charges, was the action not protected by absolute immunity. *See Burns*, 500 U.S. at 492-93. As such, Plaintiff's citation of *Burns* is of no assistance to him and absolute immunity applies to this argument.

**C. Investigation**

Plaintiff alleges that Herman's own admissions establish that she acted as an investigator by communicating with Geer during his investigation, Filing No. 79 at 4, and by asking someone if the book that the Images found in Plaintiff's possession were copied from was in the library at TSCI. Filing No. 79 at 5-6 (citing Filing No. 24-1 at para 18). Plaintiff argues that because Geer testified under oath that he did not know if the books that the Images came from were available to Plaintiff in the prison, it can be inferred that Herman did not speak to Geer about their availability and instead performed some investigation herself. *Id.* at 6.

The question of whether absolute or qualified immunity applies depends on whether the prosecutor's acts were prosecutorial, investigatory, or administrative in nature. The limits of absolute immunity in relation to

investigatory functions performed by a prosecutor were discussed by the United States Supreme Court in *Buckley v. Fitzsimmons* as follows:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.

509 U.S. 259, 273–74 (1993) (citation and internal quotation omitted).

Here, Herman declared that she "ask[ed] someone if the book that the image was copied from was in the library at the Tecumseh prison" and was "told that book would not be allowed as it would be considered contraband." Filing No. 24-1 at 4. Then, in her statement of undisputed facts she contends that, at the time of her charging decision, she was aware that no correctional facility would allow any material containing the Image in its library. Filing No. 66 at 4.

To the extent Herman conducted some investigatory work to determine if the Images came from a book potentially available to Plaintiff at the prison library before making the determination to charge Plaintiff, this activity falls outside the scope of absolute immunity. As stated by the Court in *Buckley*, "it would be anomalous, to say the least, to grant prosecutors only qualified immunity when offering legal advice to police about an unarrested suspect, but then to endow them with absolute immunity when conducting investigative work themselves in order to decide whether a suspect may be arrested." *Buckley*, 509 U.S. at 275.

> A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually

> arrested, indicted, and tried, that work may be retrospectively described as "preparation" for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial. When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same.

*Id.* at 276.

While absolute immunity does not apply here, Herman is immune from suit under the doctrine of qualified immunity because Plaintiff's claim is simply that Herman conducted an investigation or questioned witnesses in rendering her decision to charge him. Conducting an investigation or questioning witnesses—without more—does not violate clearly established law.[5] As Plaintiff does not point to any clearly established right which would be infringed by her speaking with prison staff (or anyone else) to determine that the book the Images came from were housed in the TSCI library, Herman is protected from suit via qualified immunity for her limited investigation.

IT IS THREREFORE ORDERED:

1. Respondent's Motion for Summary Judgement, Filing No. 63, is granted and Defendant Demetria Herman is dismissed from this suit with prejudice.

2. The progression order, Filing No. 29, shall remain stayed, *see* Filing No. 58, until this Court enters an amended progression order in a separate filing.

[5] Plaintiff again erroneously cites to the right to be free from malicious prosecution as the right at issue. *See* Filing No. 79 at 8. There is no basis for this Court to conclude that Herman's confirming the Images were not contained at books housed at TSCI relate to the right to be free from malicious prosecution.

Dated this 30th day of September, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge